UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CAVENACK BERNADIN | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. 1:19-cv-10057-RGS |
| LIEUTENANT DAVID WILSON, and TROOPER GEOFFREY STOKES | ) ) ) ) | |
| Defendants. | ) ) ) | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

This is a "section 1983" civil rights action sounding primarily in false arrest and malicious prosecution.

**PARTIES**

1. The Plaintiff, Cavenack Bernadin, is an individual who lives in Hyde Park, county of Suffolk, Massachusetts.

2. The Defendant, Lieutenant David Wilson (hereinafter referred to as "Wilson" or "Lt. Wilson"), is an individual whose current domicile is presently unknown but whose place of business at all pertinent times was the Massachusetts State Police Department in South Boston, county of Suffolk, Massachusetts.

3. The Defendant, Trooper Geoffrey Stokes (hereinafter referred to as "Stokes" or "Trooper Stokes"), is an individual whose current domicile is presently unknown but whose place

1

of business at all pertinent times was the Massachusetts State Police in South Boston, county of Suffolk, Massachusetts.

## JURISDICTION AND VENUE

4. The complaint alleges violations of 42 U.S.C. § 1983. Thus, there is "federal question jurisdiction" pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction of the other related claims pursuant to 28 U.S.C. § 1367 which arise out of the same transaction or occurrence. All relevant facts and the gravamen of the complaint occurred in the Commonwealth of Massachusetts.

5. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because the facts giving rise to the claims occurred within this district. Additionally, upon information and belief, the Defendant resides within the District of Massachusetts.

## FACTS COMMON TO ALL COUNTS

6. On or about January 12, 2016, Mr. Bernadin was driving his vehicle from Boston, MA to Chelsea, MA.

7. He was leading Ms. Dionne Phipps, who had recently relocated from New York to Massachusetts.

8. She was behind Mr. Bernadin in her own vehicle.

9. On the route 90 eastbound ramp, a Massachusetts State Police vehicle operated by Lt. Wilson, activated its lights and affected a motor vehicle stop of Ms. Phipps' vehicle.

10. Ms. Phipps immediately pulled into the breakdown lane without issue, and Mr. Bernadin pulled his vehicle to the breakdown lane as well, about fifty (50) yards ahead of Ms. Phipps.

11. Lt. Wilson cited Ms. Phipps for speeding.

12. After issuing the citation, Lt. Wilson pulled his vehicle behind Mr. Bernadin's vehicle, still positioned about fifty (50) yards in front of Ms. Phipps' vehicle.

13. Lt. Wilson exited his vehicle and approached the driver's side door of Mr. Bernadin's vehicle.

14. He asked for Mr. Bernadin's license and registration.

15. Mr. Bernadin procured his registration without issue and began to search for his license.

16. While Mr. Bernadin searched for his license, Lt. Wilson went back to his vehicle to run a motor vehicle query on his computer.

17. While Lt. Wilson was inside of his cruiser, Mr. Bernadin was able to locate his driver's license, which was inside his wallet that had fallen next to his seat.

18. Mr. Bernadin held his driver's license outside of the driver's side window with his left hand upon Lt. Wilson's return to Mr. Bernadin's vehicle.

19. When Lt. Wilson returned to Mr. Bernadin's vehicle, his demeanor had changed. He asked Mr. Bernadin "where his gun was" in an aggressive and hostile tone.

20. Mr. Bernadin replied that he did not have any weapons.

21. Thereafter, a second Massachusetts State Police vehicle, driven by Trooper Stokes, pulled in behind Lt. Wilson's vehicle.

22. As Trooper Stokes exited his vehicle, Lt. Wilson reached his hand through the open driver's side window of Mr. Bernadin's vehicle and began rummaging through Mr. Bernadin's left coat pocket.

23. Unaware of the circumstances surrounding Lt. Wilson's behavior and becoming fearful for his safety, Mr. Bernadin inquired as to why Lt. Wilson was searching him and what had he done wrong.

24. Both Lt. Wilson and Trooper Stokes began directing profane statements at Mr. Bernadin and ordered him to exit his vehicle.

25. Having ignored Mr. Bernadin's pleas and inquiries, the Defendants forcibly opened the driver's side door of Mr. Bernadin's vehicle and dragged Mr. Bernadin from the car.

26. The two troopers lifted Mr. Bernadin to his feet and pressed him up against the vehicle, then aggressively pushed him up against the wall of the tunnel on the eastbound side of route 90.

27. Both troopers continued to unnecessarily assault Mr. Bernadin before placing him in handcuffs and transporting him to State Police Tunnels Barracks.

28. After arriving at the barracks, Mr. Bernadin requested immediate medical attention for injuries sustained at the hands of the troopers.

29. The troopers refused to provide medical services for Mr. Bernadin and instead requested a breathalyzer examination.

30. Mr. Bernadin was never informed as to why he was placed under arrest until he arrived at the State Police Tunnels Barracks and was asked to take a Breathalyzer test.

31. Mr. Bernadin had not consumed any alcohol for more than 24 hours prior to his arrest.

32. Mr. Bernadin maintained that he had not consumed any alcohol that day and further asserted that he did not trust the troopers to properly and/or honestly administer the breathalyzer given their conduct during his false arrest.

33. Mr. Bernadin then requested that medical personnel be called in to administer the breathalyzer test.

34. This request that was denied by the troopers.

35. Instead, Defendants filed a Notice of Suspension for a Chemical Refusal with the Registry of Motor Vehicles, which resulted in a 180-day suspension of his driver's license.

36. Bernadin was held overnight at the State Police Tunnels Barracks and transported to the South Boston Division Boston Municipal Court the following morning.

37. Bernadin was released on nominal bail after the Court heard the facts of the case.

### DEFENDANT'S FILE A FALSE REPORT

38. Following Mr. Bernadin's arrest, Lt. Wilson filed a police report and application for criminal charges against Mr. Bernadin, alleging OUI-Liquor, Resisting Arrest, and Speeding.

39. The report included a number of false statements, including, but not limited to:

    a. Mr. Bernadin's eyes were red and glassy;

    b. Mr. Bernadin's speech was thick tongued;

    c. That Lt. Wilson detected a "moderate to strong odor of alcohol" on Mr. Bernadin's breath;

    d. Lt. Wilson asked Mr. Bernadin politely to exit the vehicle for field sobriety tests;

    e. After backup arrived, Lt. Wilson politely asked Mr. Bernadin to exit the vehicle;

    f. Lt. Wilson formed an honest opinion that Mr. Bernadin was under the influence of alcohol;

    g. Mr. Bernadin was attempting to retrieve an item from his waistband against the officers' instructions;

    h. The Defendants requested that Mr. Bernadin take a field sobriety test at the scene of the arrest;

      i. Mr. Bernadin refused to complete a field sobriety test at the scene of the arrest;

      j. Mr. Bernadin further refused to answer questions and refused any field sobriety tests after transport to the State Police Tunnels Barracks;

      k. Lt. Wilson continued to detect a strong odor of alcoholic beverage while at the State Police Tunnels Barracks; and

      l. Mr. Bernadin was read all his rights and elected not to take the Breathalyzer test in front of Lt. Wilson and another Trooper.

40. Unbeknownst to the troopers, much of the interaction between Mr. Bernadin and the troopers was captured on video. Ms. Phipps recorded the interaction with her cellular phone as well.

41. The videos refute the facts alleged in the police report.

42. Immediately upon his release, Mr. Bernadin travelled to the Lowney Medical Associates in Hyde Park where he submitted to complete blood alcohol and toxicology examinations.

43. These lab results demonstrate that Mr. Bernadin had not imbibed alcohol nor consumed any illicit narcotics.

44. Nonetheless, Mr. Bernadin was forced to retain private counsel to defend against the erroneous charges.

45. Mr. Bernadin incurred approximately $8,500.00 in legal fees and expenses to defend against the erroneous charges.

46. The criminal prosecution of Mr. Bernadin was eventually terminated in his favor.

47. On November 13, 2017, after the Commonwealth viewed the video taken from Mr. Bernadin's mobile phone, they informed the Court that they were not ready for trial and "did not anticipate ever being ready" for trial.

48. The court legally and finally dismissed the charges against Mr. Bernadin for lack of prosecution.

49. Mr. Bernadin was working as an Uber Driver at the time of his arrest.

50. As a result of the Defendants' conduct, Mr. Bernadin lost his ability to work for Uber while his case was pending, resulting in thousands of dollars in lost wages.

51. Additionally, he suffered emotional distress at the fear of incarceration and for having to defend against these false charges.

## COUNT ONE
## VIOLATION OF 42 U.S.C., § 1983

52. Mr. Bernadin repeats and realleges each and every allegation above stated as though such allegations were set forth herein.

53. By engaging in the conduct described above, Lt. Wilson, Trooper Stokes, and the Massachusetts State Police deprived Mr. Bernadin of clearly established and well settled Constitutional rights while acting under the color of law. Specifically, Lt. Wilson and Trooper Stokes deprived Mr. Bernadin of rights secured and guaranteed him by the United States Constitution, including, but not limited to, his Fourth Amendment right to be free from unlawful seizure of his person and his Fourth and Fourteenth Amendment rights to due process of law, including, but not limited to, his right to be free from arrest without probable cause and his right to be free from malicious prosecution.

54. Further, the wrongful acts were undertaken with grossly reckless disregard of Plaintiff's Constitutional rights.

55. As a result of the Defendants' violations of Mr. Bernadin's civil rights, Mr. Bernadin has suffered a loss of freedom, loss of enjoyment of life, extreme emotional distress, direct pecuniary disbursements, and was otherwise damaged.

56. The above constitutes violations of 42 U.S.C., § 1983 et. seq.

## COUNT TWO
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983

57. Mr. Bernadin repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

58. By having engaged in the conduct described above, the Defendants conspired to deprive Mr. Bernadin of the equal protection of the law or of the equal privileges and immunities under the law, and they acted in furtherance of the conspiracy, which resulted in the injury to Mr. Bernadin described above, in violation of 42 U.S.C. § 1983.

## COUNT THREE
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT

59. Mr. Bernadin repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

60. By engaging in the conduct described above, including threats, intimidation, and coercion, the Defendants interfered with and deprived Mr. Bernadin of his exercise and enjoyment of civil rights secured under the laws of the Commonwealth of Massachusetts, in violation of Massachusetts General Laws Chapter 12 § 11I.

61. As a direct and proximate result of the Defendants' violations of M.G.L. c. 12 § 11I, Mr. Bernadin suffered damages.

## COUNT FOUR
## FALSE IMPRISONMENT

62. Mr. Bernadin repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

63. On or about January 12, 2016, Mr. Bernadin was unlawfully and intentionally confined against his will, without right or privilege. This was the direct result of the unlawful conduct of the Defendants.

64. As a direct and proximate result of the acts described above, the Plaintiff was falsely imprisoned, deprived of his liberty, and therefore was damaged.

## COUNT FIVE
## MALICIOUS PROSECUTION

65. Mr. Bernadin repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

66. Defendants improperly instituted criminal proceedings against Plaintiff by initiating false charges out of the Boston Municipal Court.

67. The Defendants did so with malice and without probable cause motivated in part by a desire to cover up their own unlawful conduct perpetrated against Mr. Bernadin.

68. The criminal prosecution of Mr. Bernadin was legally and finally terminated in his favor.

69. As a result of their acts and omissions in causing the commencement and continuation of proceedings against Mr. Bernadin, Defendants proximately caused his great damage.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

a.      Order judgment in Plaintiff's favor in such amount as will fully compensate him for his losses to the greatest extent allowed by law;

b. Order such payment of punitive damages as are allowed by law;

c. Use its fullest equitable powers to enjoin the Defendants from using excessive force, filing false reports, making false arrests, and using the legal system to retaliate against citizens;

d. Use its fullest equitable powers to order Defendants Wilson and Stokes to submit to appropriate police training that will promote peaceful and truthful police behavior;

e. Order payment of interest, costs and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 and M.G.L c. 12 § 11H and I, and any other statute or common law theory applicable to these facts; and

f. Order such further relief as this Court deems fair and just.

## JURY DEMAND

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

RESPECTFULLY SUBMITTED,
PLAINTIFF,
Cavenack Bernadin

By and through his attorneys:

/s/ *Robert S. Sinsheimer*_____
Robert S. Sinsheimer, BBO No. 464940
SINSHEIMER & ASSOCIATES
92 State Street, 9th Floor
Boston, MA 02109
Tel: (617) 722-9954
Fax: (617) 722-9950
rsinsheimer@sinsheimerlaw.com

Dated: January 25, 2019